# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

BOBBI JOANNE CLAYTON,  )
                                                     )
            Plaintiff,          )     Case No. 3:17-cv-00053-MC
                                                     )
      v.                               )     **OPINION AND ORDER**

NANCY BERRYHILL,
Acting Commissioner of Social Security,

            Defendant.

**McSHANE, District Judge**.

Plaintiff Bobbi Joanne Clayton ("Clayton") brings this action for judicial review of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). This court has jurisdiction under 42 U.S.C. § 405(g). Because the Commissioner's decision is free of legal error and supported by substantial evidence, the decision is AFFIRMED.

## I.    BACKGROUND

Clayton applied for benefits on February 14, 2014 and alleged disability onset as of May 2, 2009. Tr. 71.[1] Clayton's date last insured ("DLI") was March 31, 2012. Tr. 199. Clayton alleged disability due to post-traumatic stress disorder ("PTSD"), chronic pain and loss of strength in her left shoulder, chronic pain in her left hip, and obesity. Tr. 205.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

Clayton's claim was heard by Administrative Law Judge ("ALJ") Linda Tommasson on April 9, 2016. Tr. 96, 150. The ALJ denied Clayton's claim on May 31, 2016. Tr. 104. Clayton subsequently filed this appeal.

## II. STANDARD OF REVIEW

A reviewing court shall affirm the decision of the Commissioner if her decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, the district court must review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## III. DISCUSSION

The Social Security Administration utilizes a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520 & 416.920 (2012). The initial burden of proof rests upon the claimant to meet the first four steps. If the claimant satisfies that burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner must show that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.* If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant

numbers in the national economy, then the claimant is not disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

At step one, the ALJ determined that Clayton engaged in substantial gainful activity for one month during the pertinent time frame. Tr. 98. At step two, the ALJ found that Clayton had severe impairments of a status post gunshot wound to her left shoulder and a status post gunshot wound to her left hip through her DLI. Tr. 99. At step three, the ALJ found that Clayton's impairments did not satisfy any of the listed impairments in 20 C.F.R. § 404.1525, App. 1. Tr. 99.

The ALJ then determined Clayton's RFC. 20 C.F.R. §§ 404.1545; 404.1569(a). Clayton's RFC allowed her to perform light work as defined in 20 C.F.R. § 404.1567(b), except that Clayton would not be able to climb ladders, ropes, or scaffold and could not frequently reach for things with her left arm. Tr. 100. At step four, the ALJ held that Clayton was capable of resuming past work as a customer service representative, policyholder information clerk, insurance producer, telemarketer, insurance processor, and administrative clerk. Tr. 103. Despite finding that Clayton was capable of past work, the ALJ continued on to step five and further determined that other jobs existed in the national economy that Clayton could have performed. Tr. 104. These occupations were file clerk, general office clerk, and food assembler. Tr. 104. Consequently, the ALJ decided that Clayton was not disabled under the Social Security Act through her DLI. Tr. 104-05.

Clayton argues that the ALJ erred because she (1) failed to develop the medical record, (2) improperly weighed the treating physician's testimony, (3) failed to properly consider Clayton's symptom testimony, and (4) improperly weighed the testimony from lay witnesses. For the reasons discussed below, the ALJ's decision is AFFIRMED.

### A. Failure to Develop the Medical Record

Clayton argues that it was legal error to not call a medical expert to help determine her onset date for PTSD. I disagree.

Determining Clayton's onset date was crucial in finding whether Clayton was entitled to disability benefits. During her hearing with the ALJ, counsel for Clayton requested that the ALJ call a medical advisor to help determine an onset date. Tr. 67. The ALJ denied the request because she believed that the unique nature of PTSD would make it impossible for a medical expert to infer an onset date from the record. Tr. 69.

The onset date is the point in which the claimant is unable to engage in any substantial gainful activity due to a mental or physical impairment that can be expected to last for at least 12 months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014)). Although Clayton has the burden establishing that she was disabled before her DLI, the ALJ also has a duty to assist in developing the record. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998). "[I]n circumstances where the ALJ must determine the date of disability onset and medical evidence from the relevant time period is unavailable or inadequate, Social Security Ruling ("SSR") 83-20 states that the ALJ should call a medical advisor." *Diedrich*, 874 F.3d at 638. However, "[SSR 83-20's] language does not expressly mandate that the ALJ consult a medical advisor in every case where the onset of disability must be inferred." *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017) (quoting *Bailey v. Chater*, 68 F.3d 75, 79 (4th Cir. 1995)).

This circuit has recognized two exceptions to an ALJ's obligation to develop the record. First, SSR 83-20 does not apply if, "despite some inadequacies in the record, 'a relatively complete medical chronology' of the claimant's condition during the relevant time period is available." *Id.* (citing *Pugh v. Bowen*, 870 F.2d 1271, 1278 & n.9 (7th Cir. 1989)). Second, a medical advisor is unnecessary when "an ALJ can reasonably and confidently say that no reasonable medical advisor could infer that the disability began during a period for which the claimant lacked medical documentation." *Id.* at 875 (citing SSR 83-20, 1983 WL 31249, at *3). In Clayton's case, only the latter exception applies because Clayton lacks medical records from October 2009 through January 2014, when Dr. Ryan diagnosed Clayton with PTSD. *See* Tr. 314; Tr. 458. As noted, Clayton's DLI is March 31, 2012.

The ALJ's decision to not consult a medical expert is supported by this latter exception. Prior to DLI, Clayton's only medical evidence concerned the physical limitations caused by the gunshot wounds. *See* Tr. 314-457. Of note, even though this medical evidence was taken by physicians and not psychologists, this evidence failed to include any references to Clayton suffering from PTSD prior to DLI. Because there was minimal medical evidence, the ALJ relied upon testimony elicited from Clayton at her hearing. *See* Tr. 100-103.

Clayton testified that she was unable to work because she was traumatized. Tr. 40. Clayton also testified that she failed to seek therapy until 2014 because she was unaware of what services were available to her. Tr. 40-41. Regarding her daily routine at the time, Clayton testified that she was able to carry out daily household chores, take care of a dog and cat, leave the house for grocery shopping, and attend Alcoholics Anonymous meetings daily. Tr. 43-44. Additionally, Clayton began running Narcotics Anonymous meetings with her boyfriend in April of 2011, about one year before her DLI. Tr. 46-47. Clayton further testified that not only did she

attend these meetings five days a week, but she played a significant role in ensuring they ran smoothly. *See* Tr. 48-49. Clayton's volunteering for Narcotics Anonymous "felt full-time." Tr. 64. Based on this testimony, the ALJ found that these activities were inconsistent with Clayton's assertion that she was unable to work before her DLI. Tr. 101.

Prior Ninth Circuit opinions provide guidance as to when an ALJ is required to seek a medical advisor's assistance in determining a disability onset date. In *Delorme v. Sullivan*, 924 F.2d 841 (9th Cir. 1991), the ALJ erred in not calling a medical advisor because, although there was not a psychological assessment until after DLI, physician notes prior to DLI indicated that the symptoms of depression were already present. *See id.* at 849 ("The records of the doctors who treated his back injury show the likely existence of records from the psychiatrists who attended him during his hospitalization for mental problems and his subsequent psychotherapy."). Similarly, in *Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991), the ALJ erred in failing to call a medical advisor because evidence in the record indicated a reasonable inference of disability prior to DLI. *Id.* at 1082 (discussing physician notes from hospitalizations that indicated claimant may have suffered from mental impairment prior to DLI). In *Armstrong*, the claimant testified that he was suffering from crying spells and drinking excessively after his wife left him. *Armstrong*, 160 F.3d at 588, 590. Although not diagnosed with mental health disorders until two years after DLI, this testimony indicated that a medical expert could have helped the ALJ infer disability onset date prior to the claimant's DLI. *Id.* at 588-89. Finally, in *Diedrich*, the ALJ erred in not calling a medical expert when the claimant had a voluminous medical record that potentially indicated a "slowly progressive impairment." *Diedrich*, 874 F.3d at 638-39. Based on this information, it was held that "an ALJ's assessment of the disability onset date would be mere speculation without the aid of a medical expert." *Id.* at 639.

Here, Clayton was not diagnosed with PTSD until more than two years after her DLI. Considering the significant gap between the two time frames and the unique nature of PTSD, it was reasonable for the ALJ to not infer disability because of proximity in time. Symptoms may "wax and wane" during the progression of a mental disorder. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). Although PTSD symptoms usually begin within three months of the traumatic event, some individuals may not develop PTSD until years after the initial trauma. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 276 (5th ed. 2013). In Clayton's case, the record contains no mental health treatment during the period at issue. Tr. 460. Further, Clayton's testimony about the period at issue illustrated that she was able to perform household chores, grocery shop, attend AA meetings, and start a Narcotics Anonymous chapter with her boyfriend. Tr. 43-44, 46-49.

Because the record was so sparse before Clayton saw a mental health specialist, no medical expert could have reasonably inferred that her disability began before March 31, 2012. Unlike the cases discussed above, Clayton lacks any indication that her PTSD symptoms were present during the time at issue. Further, her own testimony indicated an ability to carry out household chores and assist in running Narcotics Anonymous meetings, rather than an indication that her PTSD was debilitating. When considering this evidence as a whole, substantial evidence supports the ALJ's conclusion that no reasonable medical advisor could have inferred Clayton's disability onset date. *Wellington*, 878 F.3d at 875. Therefore, the ALJ was not required to consult a medical advisor and no legal error was committed. *Id.*

**B.      Dr. Ryan's Testimony**

Clayton also argues that it was improper to discount Dr. Ryan's testimony because it was developed after DLI. "The ALJ must explicitly reject medical opinions, or set forth specific,

legitimate reasons for crediting one medical opinion over another." *Garrison*, 759 F.3d at 1012 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)). Here, the ALJ provided specific, legitimate reasons for discrediting Dr. Ryan's testimony.

Generally, "[m]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1995). In 2014, Dr. Ryan diagnosed Clayton with PTSD and gave a global assessment of functioning ("GAF") of 50. Tr. 569. Additionally, in April of 2016, Dr. Ryan concluded that Clayton was "substantially limited" in her ability to function. Tr. 568. The ALJ discounted this testimony for two reasons.

First, the ALJ gave Dr. Ryan's testimony little weight because it came well after DLI. Tr. 102. Similar to the discussion above, Dr. Ryan's testimony did not indicate that Clayton's current diagnosis revealed a disability onset date before DLI. *See* Tr. 568-71. Moreover, the medical evidence from the time period at issue is devoid of any references to Clayton suffering a mental impairment. It is a specific and legitimate reason to discredit a physician's opinion when the opinion is inconsistent with medical records. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Because all medical evidence prior to DLI failed to indicate a mental impairment, it was proper for the ALJ to discount Dr. Ryan's testimony based upon this inconsistency.

Second, the ALJ also pointed out that Dr. Ryan's testimony, specifically the GAF rating, was inconsistent with Clayton's testimony regarding her ability to handle household chores, shop, and manage Narcotics Anonymous meetings.[2] Tr.102. Inconsistency between a treating provider's opinion and a claimant's daily activities may constitute a specific and legitimate

---

[2] The Commissioner has not endorsed the GAF assessment because it does not have a "direct correlation to the severity requirement [of the] mental disorders listings." 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000).

reason to discount that opinion. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600-02 (9th Cir. 1999)).

"The ALJ may reject the [treating physician's] opinion only if she provides clear and convincing reasons that are supported by the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)). Further, if the ALJ's decision is "supported by substantial evidence in the record, [this Court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

Here, the ALJ provided two clear and convincing reasons that were supported by the record as a whole, especially when considering Clayton's own testimony. Because the ALJ's decision regarding Dr. Ryan's testimony was supported by substantial evidence in the record, the ALJ did not err in assigning Dr. Ryan's opinion little weight.

## C. Clayton's Symptom Testimony

Clayton also argues that the Commissioner erred in finding her less-than credible. "Where, as here, Claimant has presented evidence of an underlying impairment and the government does not argue that there is evidence of malingering, we review the ALJ's rejection of her testimony for 'specific, clear, and convincing reasons.'" *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina*, 674 F.3d at 1112). The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim*, 763 F.3d at 1163. These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Ligenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, the ALJ supported her credibility determination with references to several of the above factors.

Clayton testified that she felt traumatized during the time period in question. Tr. 40. Specifically, Clayton stated that that she struggled to work and function on her own. Tr. 40. Regarding medication and treatment, Clayton testified that she failed to seek these remedies because she was unaware of what services were available to her. Tr. 40-41.

Despite Clayton's testimony that she felt traumatized, Clayton's description of a typical day during this time period consisted of daily chores, grocery shopping, and attending Alcoholics Anonymous meetings. Tr. 43-44. Later, in April of 2011, Clayton testified that she started a Narcotics Anonymous chapter with her boyfriend at the time.[3] Tr. 46. Clayton further testified that this new endeavor required her to conduct research, assist in setting up and taking down spaces for meetings, distribute flyers, and establish a savings account to handle donations. Tr. 47-48. As noted above, Clayton testified running the Narcotics Anonymous meetings felt like a full-time job. Tr. 64. Clayton formed the Narcotics Anonymous chapter one year before her DLI.

Based on this information, the ALJ found that Clayton's statements concerning the severity of her symptoms during the relevant time period was inconsistent with her daily activities. Tr. 101. The ALJ also noted that Clayton was not on any medication or undergoing

---

[3] Clayton argued that the ALJ was incorrect in her description of Clayton's activities regarding Narcotics Anonymous. According to Clayton, "she performed no tasks independently, but rather under the tutelage of her then boyfriend." Pl.'s Brief at 12, ECF No. 14. Although Clayton argues that another interpretation of the record is reasonable, that is not a legitimate reason for over turning the ALJ's conclusions. *See Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) ("If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996))).

counseling during the time period at issue. Tr. 100. The Ninth Circuit has held that an ALJ may consider such information in making a credibility determination. *Ligenfelter*, 504 F.3d at 1040. Therefore, the ALJ has provided "specific, clear, and convincing reasons" for finding Clayton less-than credible regarding the extent of her limitations. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). In turn, the ALJ did not err in giving little weight to Clayton's testimony. *Id.*

**D.    Lay Witness Testimony**

Clayton next argues that the ALJ improperly discounted lay witness testimony from Bob and Janyee Fisher, Jennifer Dietl, and Roxana Tolan. Clayton further argues that the ALJ erred in failing to address Jason Zwick's testimony.

Generally, the ALJ may only discount lay witness testimony by providing reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). However, an ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009)).

In Clayton's case, the ALJ discounted the testimony of the various lay witnesses because they all occurred and concerned a time frame beyond DLI. *See* Tr. 102. For example, the ALJ gave limited weight to Mr. and Mrs. Fisher's testimony, Ms. Dietl's testimony, and Ms. Tolan's testimony because they were all given more than two years after DLI. Tr. 102. It is a germane reason to dismiss lay witness testimony based on the fact that it does not concern the period of time under review. *Elliot v. Astrue*, No. 09-969-HA, 2010 WL 3732297, at *4 (D. Or. Sept. 20,

2010) ("Because plaintiff must prove his disability prior to the expiration of his insured statutes, the ALJ's decision to focus on the relevant time period is a germane reason for dismissing the lay witness testimony." (citing *Armstrong*, 160 F.3d at 590)). Based on these reasons, it was proper for the ALJ to afford little weight to the lay witness testimony of Mr. and Mrs. Fisher, Ms. Dietl, and Ms. Tolan.

Next, I turn to Clayton's contention that it was error for the ALJ not to discuss or consider Jason Zwick's testimony. When an ALJ fails to comment on lay witness testimony, this Court must determine if the error is harmless, i.e. "inconsequential to the ultimate . . . determination in the context of the record as a whole." *Molina*, 674 F.3d at 1122 (citations and internal quotation marks omitted). Mr. Zwick was Clayton's former employer and testified that he had to terminate Clayton because of her inability to handle simple tasks without assistance. Tr. 212. However, Mr. Zwick only interacted with Clayton during a time period after her DLI and Mr. Zwick's testimony discussed limitations that were not beyond what Clayton described. *Compare* Tr. 212 ("I had to end her employment because she was not able to perform those simple tasks without constant help or in a timely manner.") with Tr. 53 ("Q: For how long have you had [issues with memory]? A: I noticed it progressing as I was looking for work, trying to retain simple things.").

In *Molina*, the ALJ's failure to discuss or weigh the lay witness testimony was harmless error because the lay testimony did not describe any limitation beyond those that the claimant described, and the ALJ had already provided clear and convincing reasons for finding claimant's testimony not credible. *Molina*, 674 F.3d at 1122. Thus, the *Molina* court held that an ALJ's failure to provide germane reasons to reject lay witness testimony is harmless error when the

rejected testimony describes the same (or less extensive) limitations as properly-discredited claimant testimony. *Id.*

Similarly, Mr. Zwick's testimony described the same limitations as Clayton's properly-discredited testimony. Consequently, the ALJ could have rejected Mr. Zwick's testimony for the same reasons she found Clayton less-than fully credible. Since it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony," the ALJ did not err in giving little weight to Clayton's testimony.[4] *Id.*

## IV. CONCLUSION

The Commissioner's decision that plaintiff is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED.

DATED this 2nd day of May, 2018.

                                                       /s/ Michael McShane
                                                      Michael McShane
                                                      United States District Judge

---

[4] Alternatively, the ALJ could have discounted Mr. Zwick's testimony because it was similar to properly rejected testimony from other lay witnesses. *See Molina*, 674 F.3d at 1114.

Page 13 – OPINION AND ORDER